MICHAEL MCGILL et al., administrators, appellants,

*v.*

MARY J. O'CONNELL, respondent.

A guardian was held liable for the amount of a promissory note given by him to his ward's mother, and after her death taken into his own custody ostensibly for safe keeping, such note being found after his death among his effects, with his signature torn off, and also for the proceeds of sale of certain furniture, which also belonged to the ward's mother, and was sold at auction by him; and it was held to be no defence that no administration of the mother's estate was ever taken out; both the note and the furniture having been taken by the guardian, as such, into his possession.

---

On appeal from decree of Passaic orphans court allowing exceptions to, and surcharging the final account of, Felix McKenna, deceased, as guardian of Mary J. O'Connell.

*Mr. Warne Smyth,* for appellants.

*Mr. J. W. Griggs,* for respondent.

THE ORDINARY.

Felix McKenna, now deceased, was, in 1874, appointed guardian of Mary J. O'Connell, then and still a minor. He died intestate, and his administrators filed their account of his guardianship. The infant, by her next friend, her sister, filed exceptions thereto, claiming that it should be surcharged with half of the amount of the proceeds of the sale of the household

McGill v. O'Connell.

furniture which their mother, Bridget O'Connell, who lived and died in Paterson, owned and had in possession at her death, and which was taken by Mr. McKenna into his possession and sold, and half of the amount, with interest, of a promissory note for $600 made by McKenna, dated June 1st, 1870, and payable one year after date, to the order of Bridget O'Connell, without defalcation or discount, with interest at seven per cent. The note was given by him to their mother, and held by her up to within a short time before her death, when she handed it to her daughter Annie, bidding her take care of it. The guardian requested Annie, a few days after her mother's death, to give it to him, saying that he thought he could take better care of it than she could, and that he would put it in his safe. It was then unmutilated and entire. It was found, after his death, in his safe, with his signature torn off. The orphans court allowed both exceptions (though as to the amount, not to the extent claimed), and surcharged the account accordingly. The cause is submitted on the briefs of counsel.

No objection was made, either below or here, to the competency of the testimony adduced. The principal witness was Annie. She was a competent witness for the exceptant. It appears, from her testimony, that her mother, who was a widow, died in 1874, intestate, and that no administration of her estate was ever granted. The guardian took into his possession, as guardian, as she says, the household furniture of her mother, and, as not only appears by her testimony, but by that of the auctioneer whom he employed to sell it, sold it, and realized from the sale $142.50, as net proceeds, which were paid to him by the auctioneer. The note was given by Annie to the guardian under the circumstances before stated. The presumption, from the fact that it was found in his possession at his death, with his signature torn off, is that the signature was torn off by him, and, under the circumstances, such tearing off of the signature is an admission of the genuineness of the note and his liability to pay it. The case, on this point, is within the principles of the maxim, *omnia præsumuntur contra spoliatorem*. McKenna, therefore, was chargeable with the amount of the note and interest.

17

But it is urged (and this is the principal point discussed in the briefs of counsel), that the title to the note and furniture was never in the wards, but, on the death of their mother, was in abeyance, awaiting the appointment of a lawful representative or successor—an administrator. In the first place, the guardian took the furniture into his possession as guardian (such is the evidence), and sold it as the property of his wards; and he took the note out of the possession of one of his wards, to whom her mother delivered it with an injunction to take care of it. By law, the lawful successor of a decedent holds the title to his chattels, in trust, first, for the payment of his debts, and then for his legatees, if disposed of by will, or, if not, for those entitled thereto under the statute of distributions. *Smith's Law of Real and Pers. Prop. 323.* In the case in hand, the children were the equitable owners of the chattels in question, subject to the claims of creditors, if any; and it does not appear that there were any creditors. Their guardian having taken into his possession, as their property, the chattels to which they had such equitable title, could not shield himself from accounting to them, therefore, on the mere ground that they had no legal title, but, under the circumstances, would have been estopped, for the most obvious reasons of justice, from denying their title.

The decree of the orphans court in reference to the proceeds of the sale of the furniture is correct, but as to the note, is far too little; but it has not been appealed from by the exceptant, and it will be affirmed, with costs.